1810.

M'Mechen
vs
Grundy, &c.

---

## M'MECHEN's Lessee vs. GRUNDY & THORNBURGH. DECEMBER.

APPEAL from *Baltimore* County Court from a judgment rendered in favour of the defendant in that court, in an action of ejectment brought to recover the possession of a lot of ground in the city of *Baltimore*, described by metes and bounds. The general issue was pleaded.

Where a conveyance of a lot of ground from A B, (who had committed an act of bankruptcy,) to W M, was held not to be fraudulent, it having been made for a valuable consideration, and for the purpose of *substantially* complying with an engagement of A B to I and J P, to transfer bank stock to them to secure them against any loss they might sustain by endorsing three promissory notes for his accommodation; and A B, not having bank stock, when applied to by I and J P, offered the lot of ground to them as a substitute, and at their instance sold and conveyed it to W M, who took up the said notes—That the preference acquired by I and J P was consequential and nothing more than a substantial fulfilment of the engagement made by A B to them, at the time of endorsing the notes.

To render a payment or transfer by a debtor to his creditor fraudulent as to the other creditors, under the bankrupt law, it must be spontaneously made in consequence of a formed design to become a bankrupt. Here the conveyance made by A B was not voluntary, but produced by the application of I and J P for a transfer of the bank stock, which they were entitled to, and the refusal of A B to comply with his engagement, or to make any provision to indemnify them, would have subjected him to an action at law, or bill in chancery, for a specific execution of his contract; and in that point of view the application of I and J P must be considered as importunate and pressing.

1810.

M'Mechen
vs
Grundy, &c.

1. At the trial the plaintiff below read in evidence a grant of *Todd's Range* to *James Todd*, on the 1st of June 1700, and proved that the premises, mentioned in the declaration, were part of that tract, and that *Aquila Brown* being seized and possessed of the said premises, did, on the 20th of February 1802, convey the same to *M'Mechen*, the lessor of the plaintiff, in consideration of the sum of $14,050, by deed duly executed, acknowledged and recorded. He also offered evidence, that *I.* and *J. P. Pleasants* had previously to the 29th of December 1801, endorsed sundry notes for the accommodation of *Brown*, to the amount of $16,000, none of which were then payable, and did not become payable till after the 20th of February ensuing; and that *Brown*, on the 29th of December 1801, applied to *I.* and *J. P. Pleasants* to endorse further and other notes for his accommodation, which they refused to do, unless *Brown* would secure them, by the conveyance of property, against any responsibility which they might incur by reason of such proposed endorsements; that *Brown* did then agree with *I.* and *J. P. Pleasants* to secure them, by the transfer of bank stock, against any responsibility which they might incur by reason of such endorsements to be made by them for the accommodation of *Brown*; that in pursuance of such engagements, *I.* and *J. P. Pleasants* did endorse for the accommodation of *Brown* three promissory notes, each for $4,674, dated the 29th of December 1801, drawn by *Brown*, and payable to and endorsed by *I.* and *J. P. Pleasants*, one in 170 days, another in 180 days, and the other in 190 days; and that *Brown* did thereupon sign and deliver to *I.* and *J. P. Pleasants* the following receipt: "Received, December 29th, 1801, of *Israel* and *John P. Pleasants*, their three several endorsements of my notes for four thousand six hundred and seventy-four dollars each, making fourteen thousand dollars, which I promise to provide for and pay as they become due, say on the 17th and 27th of June, and 7th of July next; and as a security for the faithful performance thereof, I hereby engage to deposit bank stock to the amount in their hands.

*A. Brown, jr.*"

That *Brown*, afterwards did negotiate, for his own use and accommodation, the said three notes so endorsed by *I.* and *J. P. Pleasants*, with a certain *E. Pannell*, and

that *I.* and *J. P. Pleasants* afterwards, on the 19th of February 1802, knowing *Brown* to be in difficult circumstances, called on him and requested him to secure them, in pursuance of his said engagement, against any responsibility which they might incur by reason of their said endorsements; and thereupon *Brown* having then no bank stock, offered to convey to them the premises mentioned in the declaration, for the purpose of indemnifying them as aforesaid, but which they did not accept. That the lessor of the plaintiff, on the 20th of February 1802, in order to assist *I.* and *J. P. Pleasants*, agreed with *Brown* and *I.* and *J. P. Pleasants*, that if *Brown* would sell and convey to him the property mentioned in the declaration for the amount of the said notes, that he would pay *Pannell* the amount of the said notes when due; and that *Brown*, in pursuance of his said undertaking to *I.* and *J. P. Pleasants*, and at their request, and in pursuance of the above mentioned agreement between the lessor of the plaintiff, *I.* and *J. P. Pleasants* and himself, did on the 20th of February 1802, sell and convey to the lessor of the plaintiff, by the deed herein before mentioned, the premises mentioned in the declaration; and that the lessor of the plaintiff did, at the respective periods at which the said three notes became due, pay the amount of them to *Pannell*, the holder; and that the premises mentioned in the declaration were not worth the amount of the said three notes, so paid by the lessor of the plaintiff. That *Brown's* affairs being desperate, and it being impossible for him to go on with his business, or pay his debts, he was, on the said days, and particularly on the 20th of February 1802, very fearful of being arrested by his creditors, or some of them, and took measures to avoid such arrest. The defendants then gave in evidence, that *Brown* was, on the 17th of February 1802, and long before, and from that day until the 22d of the same month, a merchant, residing in the city of *Baltimore*; that he was at the said times, and long before, a person actually using the trade of merchandise, by buying and selling in gross, and dealing in bills of exchange; and that he was on the 20th of February 1802, indebted to *N. Norris* above the sum of $1,000 then due; that on that day *Norris* sued out of *Baltimore* county court a writ of *capias ad respondendum* against *Brown*, which writ was directed, and the same day delivered, to

the sheriff of *Baltimore* county, to be served upon *Brown;* that the sheriff on the same day, at 4 o'clock in the afternoon, called at the dwelling-house of *Brown* to serve the writ, who concealed himself therein, and directed one of his clerks to inform the sheriff that he, *Brown,* was not at home, although he was at that time in his said house, and did deny himself for the purpose of preventing himself from being arrested upon the said writ. That *Brown* did, before the 20th of February 1802, declare that he had been advised to become a bankrupt, and that he was determined to become one. That on the 17th of February 1802, *Brown,* being indebted to *R L, J M,* & *R C,* in the sum of $7000, on a protested bill of exchange drawn by him in their favour, and before that time protested for nonpayment, *R C* called on *Brown,* and urged him to pay or satisfy the said bill; and that *Brown* did therefore, for the purpose of discharging the said bill, execute and deliver to *R L* and *J M,* with the assent of *R C,* on the 17th of February 1802, a bill of sale of a Brig called *The Hunter,* then belonging to *Brown.* That on the 19th of February 1802, *Brown* and *J P,* being tenants in common of and in three tracts of land in *Anne-Arundel* county, containing 300 acres, *Brown* did, at the urgent request of *J P,* by deed duly executed and recorded, convey to *J P,* and his heirs, all his *Brown's* interest and estate in the said lands, in consideration of the sum of $20C0 about two years before that time expended by *J P* for *Brown* in the improvement of the said land, and in pursuance of an agreement so to convey, made by *Brown* with *J P* soon after the time of making the said improvement, and two years before the date of the deed. That all the said conveyances, including the deed to the lessor of the plaintiff, were made by *Brown* with a view to, and in contemplation of, an act of bankruptcy, stoppage of payment, and insolvency by him to be committed, and with intent to give to the several persons aforesaid, being a part of his creditors, a preference in payment of their debts, to the exclusion or injury of his other creditors; that the debts then due from him to the said persons, together amounted to $23,000, the property so conveyed to $16,000, the whole of his debts to all his creditors $460,000, and the whole of his property and estate to about $100,000. That *Brown* did actually stop payment on the 19th of February 1802,

and that one of his notes was duly protested for nonpayment on the 20th of the same month, in the afternoon. That on the 20th of February 1802, N. Norris presented to J W, then district judge of the U. S. in and for the district of Maryland, a petition stating that Brown had become bankrupt, &c. and praying the judge to grant unto him a commission of bankruptcy against Brown, &c. And did also, on the 22d of February 1802, make affidavit in writing of his debt, amounting to $2356 39, &c. He also executed on the 22d of February 1802, and delivered to the judge, his bond as required by law. That on the 22d of February 1802, the judge did, by commission under his hand and seal, appoint J C, &c. to act as commissioners of Brown. That the commissioners, having taken the oath required, &c. did on the 22d of February 1802, proceed to execute the said commission, and cause reasonable notice in writing to be served on Brown, &c. That Brown, on the 23d of February 1802, in pursuance of the notice, appeared before the commissioners, and submitted himself to the commissioners, and did not require that any jury should be impannelled, &c. That the commissioners did, on the 23d of February 1802, on due examination and proof, adjudge and declare Brown a bankrupt. That the commissioners did immediately after they had adjudged and declared Brown bankrupt as aforesaid, cause due and sufficient notice to be given to Brown's creditors, and did in such notice appoint a convenient time and place for the said creditors to meet and prove their debts, and to choose assignees, &c. which notice was duly published, &c. That at the time and place specified in the said notice, the creditors of Brown proved their debts, and did then and there duly appoint the defendants, assignees of Brown. That the commissioners afterwards, on the 11th of March 1802, made, executed and delivered, a deed to the defendants, appointing them assignees, and conveying to them all and singular the goods, &c. of Brown, of which he was possessed, &c. The plaintiff then offered evidence, that it was previously to the 20th of February 1802, concerted between Brown and Norris, the petitioning creditor, that Norris should sue forth a writ of capias ad respondendum against Brown, and that Brown should keep his house so that he should not be taken or served with the writ, and that Norris should thereupon petition

1810.

McMechen
vs.
Grundy &c.

the district judge for a commission of bankruptcy against *Brown;* and that in pursuance of the said concerted agreement between *Norris* and *Brown*, *Norris* did sue forth the writ herein before mentioned against *Brown*, and that *Brown* did, in pursuance of the said agreement, keep his house at 4 o'clock, P. M. on the 20th of February 1802, so that he could not be served with the said process; and that *Norris* did, in further execution of the said concerted scheme, petition the district judge for a commission of bankruptcy, who issued the commission herein before mentioned; and that the commissioners appointed in and by the said commission, and herein before named, did declare *Brown* a bankrupt on account of his having so as aforesaid avoided the service of the said process. That on the 20th of February 1802, there was no debt due and payable from *Brown* to *Norris.* That the deed from *Brown* to the lessor of the plaintiff was executed and delivered to the lessor of the plaintiff on Saturday the 20th of February 1802, at 8 o'clock in the morning, and that *Brown* did not consent to commit an act of bankruptcy until the 19th of February 1802, in the evening, and then with reluctance, although persuaded or advised so to do by some of his friends, and that he did not refuse to pay any of his creditors their respective debts until the 20th of February 1802. The county court, [*Nicholson* Ch. J.] upon the prayer of the defendants, directed the jury, that if they believed from the testimony in the cause that *Brown* had agreed, on the 19th of February 1802, with his friends, to deny himself to the sheriff for the purpose of committing an act of bankruptcy, thereby to lay a foundation for a commission of bankruptcy; that he did so deny himself on the 20th; that a commission issued in pursuance thereof, and that he was declared a bankrupt; that the deed from him to the lessor of the plaintiff was executed on the 20th of February, after he had formed this resolution, with a view solely to secure the *Pleasants* against any responsibility which they might afterwards incur on account of their endorsements for *Brown's* use; and that the lessor of the plaintiff accepted the said deed, and agreed to take up *Brown's* notes endorsed by the *Pleasants*, when they became payable, with the same view of relieving the *Pleasants* from their future responsibility, and to secure them against any loss which they might sustain in consequence of the

1810.

McMechen
vs
Grundy, &c.

derangements of *Brown's* business, then the said deed is not a *bona fide* purchase in the purview of the tenth section of the act of congress, but must be considered fraudulent in point of law, by giving a preference to certain persons, who might possibly afterwards become creditors, in exclusion of other creditors, if the jury believe that *Brown* had other creditors to a considerably larger amount than his funds. And inasmuch as the deed was a fraudulent conveyance, made in contemplation of, and with a determination to commit an act of bankruptcy, it is void, and is in itself an act of bankruptcy, and will support the commission and adjudication of the commissioners, although the act, upon which the commission issued, was subsequent to the execution of the deed, but upon the same day, and although the said act might not have been an act of bankruptcy. The deed to the lessor of the plaintiff being void, he cannot recover in this cause, as he has shown no other title than that derived from *Brown*, which did not pass, by reason of the fraud upon *Brown's* other creditors. The plaintiff excepted.

2. The plaintiff then prayed the opinion of the court, and their direction to the jury, that if the jury shall be of opinion from the evidence, that *Brown* was, on the 20th of February 1802, seized of the premises mentioned in the declaration, and being so seized did on that day convey the same to the lessor of the plaintiff by deed duly executed, acknowledged and recorded, for a fair and full price, and that the said deed was executed and delivered to the lessor of the plaintiff by *Brown*, before the act of bankruptcy committed by *Brown*, on which the commission of bankruptcy against him issued, and that the lessor of the plaintiff had no knowledge, information or notice, of any act of bankruptcy committed by *Brown* at the time of the execution and delivery of said deed, that then and in that case the plaintiff is entitled to recover. This opinion and direction the court refused to give. The plaintiff excepted. The verdict and judgment being for the defendants, the plaintiff appealed to this court.

The cause was argued before CHASE, Ch. J. and BUCHANAN, and EARLE, J.

*Martin* and *W. Dorsey*, for the Appellant, contended, 1. That the conveyance from *Brown* to the lessor of the

plaintiff could not be deemed a voluntary preference on the part of *Brown*; and if it was not voluntary, it was not fraudulent. And 2. That if it was made in contemplation of bankruptcy, and to give a preference, still it was not by that circumstance void, because it was made on the pressing application of creditors. They referred to the act of congress, to establish an uniform system of bankruptcy, passed on the 4th of April 1800, *ch.* 19. *Phœnix vs. Ingraham's assignees,* 5 *Johns. Rep.* 412. *Hartshorn vs. Slodden,* 2 *Bos. & Pull.* 582. *Ex Parte Scudamore,* 3 *Ves.* 85. *Worseley vs. De Mattos,* 1 *Burr.* 467, 480. *Harman vs. Fishar,* 1 *Cowp.* 117. *Small vs. Dudley,* 2 *P. Wms.* 427. *Rust vs. Cooper,* 2 *Cowp.* 629. *Hooper vs. Smith,* 1 *W. Blk. Rep.* 441. *Thompson vs. Freeman,* 1 *T. R.* 156, *(note.) Smith vs. Payne,* 6 *T. Rep.* 152. *Yeates vs. Groves,* 1 *Ves. jr.* 280. *Hopkins vs. Grey,* 7 *Mod.* 139. *Cock vs. Goodfellow,* 10 *Mod.* 489, 497; and *Smith vs. Hodson,* 4 *T. R.* 211, 212.

*Harper* argued for the Appellees.

Chase, Ch. J. delivered the opinion of the court. The court are of opinion, that the conveyance from *Aquila Brown* to *William M'Mechen,* the lessor of the plaintiff, is not fraudulent, the same having been made for a valuable consideration, and for the purpose of substantially complying with the engagement of *Brown* to the Messrs. *Pleasants,* to transfer or deposit bank stock with them, to secure them against any loss they might sustain by endorsing the three notes. As *Brown* could not comply with his engagement to transfer or deposit bank stock with the Messrs. *Pleasants,* when applied to by them, and as *Brown* offered to convey the house and lot to them as a substitute for the bank stock, and inasmuch as the conveyance was made to *M'Mechen,* with the concurrence of all the parties then concerned, on his engaging to take up the notes, the preference acquired by the Messrs. *Pleasants* was consequential, and nothing more than a substantial fulfilment of the engagement made by *Brown* to them at the time of endorsing the notes.

The court are of opinion, that to render a payment or transfer by a debtor to his creditor, fraudulent as to the other creditors, under the bankrupt law, it must be spontaneously made in consequence of a formed design to be-

come a bankrupt. In this case the conveyance made by *Brown* was not voluntary, but produced by the application of the Messrs. *Pleasants* for a transfer of bank stock, which they were entitled to, and the refusal of *Brown* to comply with his engagement, or to make any provision to indemnify them, would have subjected him to an action at law, or bill in chancery for a specific execution of his contract, and in that point of view the application of the Messrs. *Pleasants* must be considered as impertunate and pressing.

The court reverse the judgment of the court below, this court dissenting from the opinions expressed in both of the bills of exceptions, and awarded a *procedendo.*

JUDGMENT REVERSED, &c.