## Case No: 11,344.

### Ex parte POTTS et al.

[Crabbe, 469; [1] 1 Pa. Law J. 159.]

·District Court, E. D. Pennsylvania. July 9, 1842.

INSOLVENCY — AGREEMENT FOR EXTENSION — AT-TACHMENT BY CERTAIN CREDITORS—FRAUDULENT TRANSFER — ACT OF BANKRUPTCY — IN PURSU-ANCE OF PRIOR AGREEMENT.

1. P. & G., of Philadelphia, being in involved circumstances, certain of their creditors entered into an agreement for an extension of credit, which agreement was not to be binding unless all the creditors became parties to it; subsequently other creditors, in New York, attached property of P. & G., in that city. This was such an unequivocal act of dissent on their part as to render the agreement null, and to enable those who signed it to become petitioning creditors.

2. Any transfer of property, no matter in what form. if with a view to give a preference, and in contemplation of bankruptcy, is void.

3. Where it is doubtful whether or not the intention of a transfer of property was such as to make it an act of bankruptcy, evidence will be received to prove the true circumstances of the whole transaction.

4. An agreement for an extension of credit being in circulation among the creditors of P. & G.. they. under the advice of counsel, endorsed a bill of lading to a third party, a creditor, for the avowed purpose of protecting the property from attachment, and for the benefit of all the creditors: this was not an act of bankruptcy.

5. Parties in prosperous circumstances agreed to transfer certain property to a third person as collateral security for advances made, but the transfer was not then completed: subsequently, after they became involved, the transfer was concluded in pursuance of the agreement: this was not an act of bankruptcy.

6. The specific acts of bankruptcy relied on by the petitioners must be set forth in their petition, and evidence of no others will be received under it.

This was a petition by certain creditors of Potts and Garwood to have that firm declared bankrupt. It appeared that Potts and Garwood were shipping merchants in Philadelphia. During the month of April, 1842, they became involved, and called a meeting of their creditors, which was very generally attended by them, and at which a committee was appointed to examine and report upon the affairs of the firm; under the recommendation of this committee an agreement was subsequently entered into by most of the creditors, among whom were the petitioners, by which further time was given to enable the respondents to meet their liabilities, it being however expressly stated in the agreement that it should be of no binding effect unless entered into by all the creditors. Before it was ascertained whether all the creditors would agree to this extension, a quantity of coffee arrived in New York consigned to the respondents, and, on receiving the bill of lading thereof, they desired to endorse it to one Richard D. Garwood, the father of one of the firm. stating to him that they wished to do so

for the benefit of all the creditors and to protect the property from attachment; the proposed endorsee declined consenting to this until he. together with the respondents, consulted Mr. Nathan R. Potts, the father of the other member of the firm, and a practising lawyer in Philadelphia, who on the same statements being made to him advised the transaction. Richard D. Garwood then consented, the bill of lading was endorsed to his order on the 6th of May, 1842, he at once endorsed it to a firm in New York, who were the correspondents of Potts and Garwood, and by letter directed these endorsees to receive the coffee and forward it to him in Philadelphia. Richard D. Garwood was then an endorser of notes of Potts and Garwood, amounting to more than $7000. The coffee had, in the mean time, and without the knowledge of any of the parties in Philadelphia, been attached in New York by one Herricks, a creditor of the respondents. It also appeared that during the months of February and March, 1842, when Potts and Garwood were, as far as appeared, perfectly solvent, an agreement was entered into between them and one Smith, by which he was to make advances and receive, as collateral security therefor, the policies of insurance and bills of lading of a certain vessel and cargo belonging to them and then at sea, as soon as such policies and bills came into their possession. Under this agreement Smith made advances, the last of any amount being in March, and Potts and Garwood endorsed the bills and policies to him, one endorsement being as late as the 1st of May. This proceeding was commenced on the 14th of May, 1842, immediately after it was discovered that the coffee had been attached in New York, the petitioning creditors alleging that Potts and Garwood had become bankrupts by "fraudulently concealing their goods and chattels and effects, to prevent their being levied upon, or taken in execution or by other process, by their creditors; and by making a fraudulent conveyance and assignment, on the 6th day of May then last · past, of their goods and chattels, that is to say of a certain quantity of coffee, to Richard D. Garwood, in contemplation of bankruptcy."

The case came on to be heard before Judge Randall, on the 27th of June, 1842, and was argued by M'Ilvaine & Dallas for the petitioning creditors, and by Mr. Sergeant for Potts and Garwood.

Mr. M'Ilvaine, for petitioning creditors.

These creditors have a right to present their petition, and are not barred by the agreement for extension of credit. That agreement failed by means of the attachment on the coffee by the New York creditors. The great and glaring act of bankruptcy was the transfer of the bill of lading for the coffee to Richard D. Garwood. That transfer was absolute on its face, and if there were any trust in it, that trust was secret; the evidence shows it

to have been a legally fraudulent assignment, and this fraud alone renders it an act of bankruptcy under the first section of the act, without there being any necessity for its execution in contemplation of bankruptcy. An act of bankruptcy is different from contemplation of bankruptcy, and an unequivocal act of bankruptcy like this cannot be explained away. Eden, Bankr. 13, 17; Colkett v. Freeman, 2 Term R. 59, 62; Hopkins v. Ellis, 1 Salk. 110; Worseley v. Demattos, Burrows, 484. Acts of bankruptcy are of two classes: one, where the act is equivocal and the intent becomes material, the other where the act, being positive, the intent is immaterial. Eden, Bankr. 32. If the transfer were made to Richard D. Garwood in consideration of his debt, and to secure him, then it was a preference; if it was not so made, it was without consideration and void. By the respondents' own avowal, it was made to prevent attachments, and such an intent constitutes it an act of bankruptcy. Passmore v. Eldridge, 12 Serg. & R. 201; Thomson v. Dougherty, Id. 453; Gilmore v. North American Land Co. [Case No. 5,448]; M'Clurg v. Lecky, 3 Pen. & W. 93; M'Kee v. Gilchrist, 3 Watts, 230. An intent to hinder creditors by such an assignment will be presumed if the assignor is simply in debt; how much stronger is our case, where there is an avowal of that intent. Irwin v. Keen, 3 Whart. 354; Eden, Bankr. 26, 35. There is no doubt that the respondents were insolvent; their very act of placing property in a third party's hands for the benefit of creditors was an avowal of it, and insolvency is presumptive evidence of a contemplation of bankruptcy. Eden, Bankr. 12; Harrison v. Sterry, 5 Cranch [9 U. S.] 301; Poland v. Glyn, 2 Dowl. & R. 310; Singleton v. Butler, 2 Bos. & P. 283; Ogden v. Jackson, 1 Johns. 370; Phœnix v. Day, 5 Johns. 414; Rust v. Cooper, Cowp. 629. The transfer was void under the act of assembly of Pennsylvania of 24th March, 1818 (Dunl. Laws, 3d Ed., 323), requiring such assignments to be recorded within thirty days. Englebert v. Blanjot, 2 Whart. 244. But it was good and valid between the parties to it, and therefore a preference. Stewart v. Kearney, 6 Watts, 454.

Mr. Sergeant, for Potts and Garwood.

The petitioning creditors have no right to be before the court: this proceeding was commenced while the agreement for extension of credit was still in circulation; that agreement amounted to an undertaking not to proceed against the respondents until a reasonable time had been allowed them to obtain the assent of all their creditors; these petitioners therefore had no debt due to them when they came into court. The petition alleges two acts of bankruptcy: a fraudulent concealment of goods to prevent their being taken in execution, and a "fraudulent conveyance and assignment," on the 6th May, of a quantity of coffee, to Richard D. Garwood,

in contemplation of bankruptcy. The petitioners have chosen to rely on the expression "conveyance and assignment," and they are bound by it. The words thus used mean a deed of precisely similar character, that is, a conveyance under seal (Eden, Bankr. 26; 2 Bl. Comm. 210); yet in support of this allegation they offer the endorsement of a bill of lading. But how does this case stand under the bankrupt law? That law makes acts of bankruptcy of all fraudulent conveyances or transfers, and by "fraudulent" is meant all such transfers as were fraudulent under the statute of 13th Elizabeth or by common law, or such as were made fraudulent or acts of bankruptcy by the bankrupt law itself; and here it may be remarked that all transfers declared void under the bankrupt law are acts of bankruptcy. This transfer, however, was not fraudulent under the statute of Elizabeth, for that statute only applied to transfers without good consideration, while this had an ample consideration in the endorsements by Richard D. Garwood. It is certain also that no other law in force in Pennsylvania, independent of the bankrupt law, would invalidate this transfer, 'for, so far as the act of assembly of March, 1818, is concerned, it will be sufficient to say, besides other objections, that but eight days elapsed between the transfer and the filing of this petition. If, therefore, this transfer was void and an act of bankruptcy, it must be so under the bankrupt law itself; and it must be under the second section of that law, for the first section only applies to such transfers as are void by the statute of Elizabeth or the common law. Under the second section of the bankrupt law, a transfer, to be void and an act of bankruptcy, must be in contemplation of bankruptcy, and to give a preference. But this transfer was not such as would be void as in contemplation of bankruptcy. Fidgeon v. Sharpe, 5 Taunt. 539; 1 Marsh. 196; Harwood v. Bartlett, 6 Bing. N. C. 62. Neither was its purpose a preference, but the benefit of all the creditors.

Mr. Dallas, for petitioning creditors, in reply.

The questions to be met are two:—first, whether the petitioners have a right to be before the court; and second, whether they have made out a case to entitle them to the decree prayed for. The only objection to the right of these creditors to come into court arises under the proposed agreement for an extension of credit to Potts and Garwood; but we assert that this agreement was violated and destroyed both by the transfers to Smith and Richard D. Garwood, which gave them means of payment while other creditors were postponed, and by the attachment of the coffee by the New York creditors, which was such an expression of dissent on their part as dissolved the agreement by its own provisions. To make out their case for a decree, the petitioners allege that the transfers to Smith and Richard D. Garwood were acts of bankruptcy, under the bankrupt law, as fraudulent prefer-

ences, made in contemplation of bankruptcy. They were fraudulent under the first and second sections of the bankrupt law, for we think that the acts described in the second section, are there described to show what shall be considered fraudulent under that law, and are, therefore, included under the term "fraudulent" in the first section. They were preferences, for on their face, and by their necessary operation, they gave to some creditors means of securing themselves which others did not possess. They were in contemplation of bankruptcy, because it appears from the evidence that so early as the 1st of May, the respondents had good reason to believe themselves insolvent, and, therefore, must have had the idea of bankruptcy presented to their minds.

RANDALL, District Judge. Objection has been made to the right of G. Harley and Son, who filed this petition, to become petitioning creditors, inasmuch as they had signed the agreement for an extension of credit, and a sufficient time had not elapsed to ascertain whether all the creditors would become parties to that agreement, so as to make it binding. Under ordinary circumstances, and if there had been no express dissent, perhaps a reasonable time had not elapsed, and they would not have been entitled to proceed against the respondents; but I think that where a creditor, after a proposition to compromise has been submitted to him, attaches the property of his debtor in another state, it is such an unequivocal act that his dissent may reasonably be presumed. The transfer to Richard D. Garwood has been mainly relied on as the act of bankruptcy here; and whether it is or is not such an act depends on the terms and conditions on which it was made. If the object of the transfer was to give Richard D. Garwood a preference over the other creditors, and if it was made in contemplation of bankruptcy, then it is void, as being contrary to the spirit and policy of the bankrupt law, which contemplates equality among all the creditors; and it matters not whether a preference, by a person subject to be involuntarily declared a bankrupt, is given by a general assignment of all his property or by a transfer of a portion of it; if it is done with a view to give a preference, and in contemplation of bankruptcy it is void, no matter what be its form. In this case the transfer of the bill of lading is made in the ordinary form. No trust appears on the face of it, and none was declared in writing by Richard D. Garwood when he received it, and it is contended that no evidence can now be received to show a trust. It may be that a substantive and unequivocal act of bankruptcy, where the preference is apparent on the face of the instrument, can not be explained by other circumstances; but when the act is of an uncertain or doubtful character, I can see no objection to evidence tending to prove the true circumstances of the whole transaction. What is the evidence here? A majority of the creditors of Potts and Garwood offered them an extension

of nine, twelve, and fifteen months, for payment, provided all the creditors named in a schedule attached to the agreement should assent to it, and on condition that they should be paid in equal proportions out of the property of Potts and Garwood, while if these last were able to anticipate the time of payment it was to be done. The coffee in question was part of the property relied on for paying the creditors. As soon as it was ascertained that it had arrived in New York the transfer of the bill of lading was made to Richard D. Garwood, for the purpose of carrying out the views of the creditors. It is true that this object of the transfer does not appear on the face of it; but it is clearly in evidence that it was made and accepted, under the advice of counsel, for the equal benefit of all the creditors and as the best mode of carrying their intentions into effect; the transferee disclaiming all right or claim to any priority.

But still it is said this transfer was, under the circumstances, an act of bankruptcy. The first section of the bankrupt law makes any "fraudulent" conveyance, assignment, sale, gift, or other transfer of lands, tenements, goods or chattels, credits, or evidences of debt, an act of bankruptcy. To know what are "fraudulent" conveyances, &c., we may consider: First, what are fraudulent at common law; second, what are fraudulent by the statute of Elizabeth; and third, what are declared so by the second section of the bankrupt law, as frauds upon that act. If the view I have taken of the evidence in this case be correct, the present transfer does not come within any of these classes. An assignment for the benefit of creditors is made on good and sufficient consideration, and is perfectly valid, both at common law and under the statute, while to make it void under the second section of the bankrupt law, it must be made, not only in contemplation of bankruptcy, but also for the purpose of giving a creditor, endorser, surety, or other person, a preference or priority over the general creditors of the bankrupt; but where the object is as the evidence shows it to have been here, to prevent such a preference or priority. I cannot consider the transfer as a fraud. The transfers to D. Smith, Jr., as collateral security for his advances have been urged as acts of bankruptcy, one of them being as late as the 1st of May, 1842; but the evidence is, that they were made in pursuance of an agreement entered into in February, and the last advance of any amount was made in the early part of March, when the parties were supposed to be in prosperous circumstances. [See McMechen's Lessee v. Grundy, 3 Har. & J. 185.][2]

It has, however, been urged, that the respondents are insolvent, and therefore, liable to be declared bankrupts under the fourteenth section of the bankrupt law. Without undertaking to decide whether that section declares insolvency in case of partners, to be in itself

[2] [From 1 Pa. Law J. 159.]

an act of bankruptcy, and, if so, whether such insolvency means a mere present inability to pay debts, or an open, notorious insolvency, exhibited by an assignment of all their property, or an application for the benefit of the insolvent laws, it is sufficient, at present, to observe, that this is not one of the acts of bankruptcy specified in the petition. The rules of court require the particular acts of bankruptcy intended to be relied on to be specially set forth; and the act of congress directs twenty days' notice of the time and place of hearing to be given to the respondents, that they may be prepared to rebut the allegations if unfounded in fact. The propriety of this rule is exemplified in the present case. The parties are charged with having made a fraudulent transfer of their property, and evidence has been taken in relation to that charge; on the hearing, the charge of insolvency as an act of bankruptcy is, for the first time, made. It has been said that in criminal cases, if any offence is proved, the party will not be released, whether it is the offence charged or not. This may be true on a preliminary hearing; but on a final trial, such as this, the specific offence charged must be proved, or the party will be acquitted; though a new prosecution may be had against him on other charges. I am of opinion that the petitioners have failed to establish their right to have the respondents declared bankrupt; and that, therefore, the petition should be dismissed.

[Subsequently to this decision, as the reporter was informed, a friend of the respondents purchased Henrick's claim for 75 p. c., and all the creditors then came into the agreement of extension. The Harleys sued P. and G. on the debt upon which the petition was founded, alleging that the terms were not complied with by a transferee's signing the extension. P. and G. then brought suit against the Harleys for damages, the result of having filed this petition.][2]

[For subsequent proceedings in this litigation, see Case No. 5,258.]